The STATE ex rel. BAKER

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION.

[Cite as *State ex rel. Baker v. Ohio Dept. of Rehab.
& Corr.* (1991), 76 Ohio App.3d 163.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–188.

Decided Oct. 29, 1991.

*Leroy Baker*, pro se.

*Lee I. Fisher*, Attorney General, and *Raymond J. Studer*, for respondent.

PETREE, Judge.

Relator, Leroy Baker, an inmate at the Southern Ohio Correctional Facility ("SOCF") at Lucasville, Ohio, filed this original action, *pro se*, on February 20, 1991, seeking a writ of mandamus to order respondent, Ohio Department of Rehabilitation and Correction, to release him from administrative control ("AC") under Ohio Adm.Code 5120–9–13 into the general prison population of SOCF. In his initial and amended petitions, relator alleges that the SOCF AC

Review Committee released him from this administrative segregation confinement on December 28, 1990, but the warden of SOCF, Arthur Tate, had him recommitted to AC to "punish" him again for the same offense that initiated his original confinement to AC. Relator argues that the applicable administrative regulations governing correctional institutions do not allow for such action. Rather, relator contends that once a prisoner is released from AC, some new rule infraction or event must occur to justify reconfinement. Without such a principle of finality, relator contends that the hearing and notice procedures afforded in the Administrative Code and by due process become meaningless protections against arbitrary bureaucratic action.

Both parties filed motions for summary judgment. Respondent argues in its motion that Warden Tate had authority under Ohio Adm.Code 5120–9–13(A) and (B) to take the action that he did and, therefore, relator has no clear legal right to the relief requested. In support of its motion, respondent attached the affidavit of Warden Tate, who explained his actions and the records regarding relator's confinement.

The records reveal that on June 16, 1990, relator was involved in an altercation in the prison showers with an inmate named Mossburg, who was cut on the throat. Relator was apprehended and immediately placed in security control (isolation) under Ohio Adm.Code 5120–9–11. Two days later, relator was charged with violating Class II rules under Ohio Adm.Code 5120–9–06(4), (5) and (19). Relator appeared before the SOCF Rules Infraction Board ("board") and was found guilty of violating Class II Rule 19 for committing an assault on Mossburg with a handmade knife. The board imposed a four-day sentence of disciplinary control, referred the matter to the SOCF AC Committee, and ordered separation of relator and inmate Mossburg.

The AC Committee recommended AC status on the same day. Four days later, on June 22, 1990, the Central AC Committee reviewed the matter and, after affording relator a hearing, approved indefinite AC placement on account of relator's misconduct in cutting Mossburg.

Pursuant to Ohio Adm.Code 5120–9–13(F), relator's AC status was reviewed by the SOCF AC Review Committee on October 5, 1990. The committee noted that relator was the subject of two misconduct reports while in AC segregation. He was told that with ninety days of clear conduct, he would be considered for release. Then, on December 28, 1990, the SOCF AC Review Committee did in fact release relator into the general prison population.

Twenty-three days later, however, Warden Tate had relator returned to AC due to the seriousness of the June 16, 1990 offense, which involved cutting another inmate's throat with a knife made of a razor blade melted onto a plastic handle. Warden Tate immediately notified all concerned, including

relator. A day later, the AC Committee, after affording relator an opportunity to be heard, recommitted relator to AC because he was involved in a serious cutting with Mossburg. The committee noted that this placement was based upon relator's " * * * demonstrated assaultive, predatory or other dangerous criminal conduct while in the institution." This placement was approved by the Chief of the Bureau of Examination and Classification and Warden Tate, the managing officer of SOCF.

Relator replied to respondent's motion and submissions on May 2, 1991, arguing that Warden Tate had no authority to recommit him to AC. Relator attached affidavits of fellow inmates who overheard inmate Mossburg indicating that he was jealous that relator had engaged in sex with Mossburg's cellmate and that Mossburg would get him for it. Relator contends that Mossburg was the aggressor in the altercation between the two in the showers and that relator was prejudiced because Warden Tate was unaware of this; yet he made the decision to reconfine relator to AC.

██ At the outset, we note that relator filed a motion for default judgment on April 17, 1991 on account of respondent's untimely responses. Since respondent had appeared and defended in this action and there is no prejudice to relator, default judgment is inappropriate under Civ.R. 55.

██ In order for this court to issue a writ of mandamus, relator must demonstrate (1) that he has a clear legal right to the relief requested, (2) that respondent has a clear legal duty to perform the act requested, and (3) that relator has no plain and adequate remedy in the ordinary course of law. *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28, 6 OBR 50, 451 N.E.2d 225.

Administrative segregation is governed by Ohio Adm.Code 5120–9–13, which provides in pertinent part:

"(A) An inmate may be placed in administrative control for an indefinite time period upon the approval of such placement by the central office administrative control committee (hereinafter 'the committee'), which shall consist of a two-member panel appointed by the director, at least one of such members shall be the chief of the bureau of examination and classification, or his designee, who shall chair the committee.

"(B) Recommendations for placement in administrative control may come from the managing officer of an institution, after a hearing at which the inmate is afforded an opportunity to be heard concerning the proposed placement. Such placement shall be based upon:

"(1) An inmate's assaultive, predatory or other dangerous criminal conduct while in any institution;

"(2) The inmate's serious threat to the security of the institution in which the inmate currently resides.

" * * *

"(F) The status of each inmate in administrative control shall be reviewed monthly by the committee. This review shall consist of a review of the classification file information on such inmate. The committee shall interview the inmates in administrative control every three months. The committee may remove an inmate from administrative control, or change the inmate's placement to a different level of administrative control, pursuant to paragraph (C) of this rule, at its discretion. A decision to release from administrative control shall result in a referral to the institution reclassification committee of the same institution for general population placement."

Given these regulations, we cannot see how relator has a statutory or due process right to be released in this case. Clearly, after relator's rule infraction, he was disciplined as provided for in Ohio Adm.Code 5120–9–08(B), by the board. Upon referral to and review by the AC Committee, he was given an indefinite AC status based upon his misconduct. He thus was subject to the periodic review of the committee by virtue of Ohio Adm.Code 5120–9–13(F). Under this provision, the committee may remove an inmate from AC at its discretion. While it is true that this provision states that " * * * a decision to release from administrative control 'shall' result in * * * general population placement," there is nothing in this code section which confers offense-specific finality or some double jeopardy concept, as relator seems to contend.

Rather, under Ohio Adm.Code 5120–9–13(B), the managing officer of SOCF, which here is Warden Tate, may recommend AC placement on his own initiative. After a hearing affording the inmate an opportunity to rebut the recommendation, the AC Committee may place the inmate in AC status if it is demonstrated that the inmate's past behavior poses a threat to the institution. This is not punishment as relator perceives it to be. Rather, it is a predictive assessment of relator's behavior designed to protect other individuals at the institution.

Hence, while some double jeopardy concept might make sense in the disciplinary context, in the context of a preventive measure, it really does not. Relator is being confined because prison officials have some evidence that he presents a risk to others. Thus, we do not think that the fairly stringent due process principles applicable to disciplinary proceedings under *Wolf v. McDonnell* (1974), 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935, govern in this case. If anything, the more flexible rules for administrative segregation decisions govern here.

In this regard, the United States Supreme Court has held that while the Due Process Clause does not in itself afford protection to an inmate whose liberty has been taken away to the extent of the imposition of his sentence, certain regulations, which go beyond mere procedural guidelines, will create a protected entitlement to liberty invoking Due Process Clause protection. *Hewitt v. Helms* (1983), 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675. In *Hewitt,* the court found that Pennsylvania's administrative segregation regulations employed language of an unmistakably mandatory character and contained specific substantive predicates delimiting confinement decisions. Because of this, the court found an interest in liberty was conferred that deserved due process protection.

Nevertheless, the *Hewitt* court reasoned that because administrative segregation was nonpunitive in nature and less onerous than disciplinary confinement, relaxed procedure was warranted. Emphasizing the flexibility necessitated in such decision-making, the court endorsed the principle that an " * * * informal nonadversary review of [the] evidence * * * " was required. *Hewitt, supra,* at 474, 103 S.Ct. at 873, 74 L.Ed.2d at 690. Indeed, the court recognized that such nonadversarial review could take place after the inmate was transferred to the more restrictive confinement, so long as a hearing occurred within a reasonable time and upon some notice to the inmate. *Id.* at 476, 103 S.Ct. at 874, 74 L.Ed.2d at 691, fn. 8. Further, the court said that prison officials must periodically review the confinement status of inmates in administrative segregation to determine if the reasons supporting confinement still exist. *Id.* However, the court emphasized that administrative segregation may not serve as a " * * * pretext for indefinite confinement of an inmate." *Id.* at fn. 9.

Here, the Ohio Administrative Code does contain mandatory release language in Section 5120–9–13(B) and substantial predicates for decision in Section 5120–9–13(B)(1) and (2). But, even if this were viewed as creating an interest in freedom from confinement in AC, relator cannot prevail in this case.

Ohio Adm.Code 5120–9–13(B) provides that the warden can recommend AC placement on his own initiative and that the AC Committee is to review this recommendation and act upon it. This procedure appears to be entirely consistent with the flexible approach mandated by the *Hewitt* court. In effect, Warden Tate's recommendation in this case simply served to invoke the judgment of the AC Committee so that they would reconsider the decision to release. In fact, the warden emphasized and called to the attention of the committee the *serious* nature of the cutting, which involved the manufacture of a dangerous weapon, assaultive behavior, and the cutting of inmate

Mossburg's throat. This type of informational give-and-take is just the sort of flexible procedure contemplated by the *Hewitt* court. Further, we do not think it is improper for the committee to defer to the warden, and approve of his recommendation, given his natural familiarity with the situation and circumstances involved. Hence, even if mandamus were available on due process grounds in a general sense, there does not appear to be a procedural violation in this case.

Accordingly, there does not appear to be any basis in the regulations themselves or in due process principles which prohibits the warden from recommending reconsideration of a release decision. While there may be a problem with respect to the warden's immediate AC confinement of relator for one day prior to the hearing on this case, we do not see how mandamus could cure such a problem now. And in any event, it appears that the warden could have placed relator in the more restrictive security control under Ohio Adm. Code 5120–9–11(A) pending investigation of his AC status.

In the final analysis, relator seeks to have recognized that he is not deserving of AC status because he was not the aggressor in the Mossburg assault. However, these factual issues were to be taken up at his AC review. Here, it must be said that there was some evidence upon which the authorities acted and that those authorities acted in conformance with the applicable regulations and due process principles.

For the foregoing reasons, relator has not established a clear legal right to the relief requested. Consequently, relator's motions for default judgment and summary judgment are overruled, and respondent's motion for summary judgment is sustained. Accordingly, relator's request for a writ of mandamus is hereby denied.

*Relator's motions for*
*default judgment*
*and summary judgment are overruled;*
*and respondent's motion for*
*summary judgment is sustained;*
*and writ denied.*

STRAUSBAUGH and MCCORMAC, JJ., concur.